Kristina Martinez
3872 West Street
Oakland, CA 94608
Ph: (510)847-2101
beynassar@yahoo.com

Kristina Martinez, IN PRO PER

**FILED**

JUL 1 0 2024

CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA
OAKLAND, CALIFORNIA**

*AGT*

KRISTINA MARTINEZ - VESSEL
c/o Kristina Martinez - Living wo-Man

        Plaintiff(s),

vs.

AMWEST FUNDING CORP.,*and/or its successors,
individually, and in their official capacity, an ens
legis being used to conceal fraud.*

        Defendant(s).

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

**C24-04149**

Case No.:

Complaint

**I. FRAUD IN THE EXECUTION
II. BREACH OF CONTRACT
III. NEGLIGENT NEGOTIATION
PERSUANT TO UCC § 9**

**REQUESTING HEARING IN EQUITY
RESERVE THE RIGHT TO AMEND**

**JURY TRIAL DEMAND**

    **COMES NOW**, Kristina Martinez (hereinafter Plaintiff) proceeding in *propria persona*, and files her civil lawsuit aforementioned for the real property located at 3872 West Street, Oakland, California 94608. Plaintiff is before this court without waiving any rights or defenses, statutorily or procedurally.

**INTRODUCTION**

**1.** This action is a civil action filed by Kristina Martinez, (hereinafter "Plaintiff" and/or "Martinez") against AMWEST FUNDING CORP. (hereinafter 'Defendant" or "AMWEST") for misconduct related to their origination and servicing (respectively) of Plaintiff's single family residential mortgage.

**2.** The Plaintiff demands that her pro se status be recognized and treated by this ~~Chancery~~ District *[K.m.]* Court as the United States Supreme Court has instructed the federal courts to liberally construe the "inartful pleading" of pro se litigants. *Boag v. MacDougall*, 454 U.S. 364, 365, 102 S.Ct. 700, 701, 70 L.Ed.2d 551 (1982) (per curiam). "It is settled law that the allegations of [a pro se litigant's complaint] `however inartfully pleaded' are held `to less stringent standards than formal pleadings drafted by lawyers . . . .'" *Hughes v. Rowe*, 449 U.S. 5, 9, 101 S.Ct. 173, 175, 66 L.Ed.2d 163 (1980) (quoting *Haines v. Kerner*, 404 U.S. 519, 520, 92 S.Ct. 594, 595, 30 L.Ed.2d 652 (1972)); *see also Noll*, 809 F.2d at 1448 ("Presumably unskilled in the law, the pro se litigant is far more prone to making errors in pleading than the person who benefits from the representation of counsel."); *Ashelman v. Pope*, 793 F.2d 1072, 1078 (9th Cir. 1986) ("we hold [plaintiff's] pro se pleadings to a less stringent standard than formal pleadings prepared by lawyers.").

**3.** Not only is the district court to view the *pro se* complaint with an understanding eye, but, while the court is not to become an advocate, it is incumbent on it to take appropriate measures to permit the adjudication of *pro se* claims on the merits, rather than to order dismissal on technical grounds. Indeed, it is the "well-established duty of the trial court to ensure that the claims of a *pro se* litigants are given a fair and meaningful consideration." *Palmer v. City of Decatur*, 814 F.2d 426, 428-29 (7th Cir. 1987) (citations omitted).

**4.** As described in the allegations below, Defendants misconduct resulted in the issuance of an improper mortgage and violations of Plaintiff's homeowners rights and protections with the use of false and deceptive affidavits and other documents. Each of the allegations regarding Defendants contained herein applies to instances in which the defendant engaged in the conduct alleged.

## THE PARTIES

**5.** This action concerns certain real property, of which, Plaintiff, Kristina Martinez, residing in the State of California, County of Alameda, and *inter alia*, is the purchaser of certain real property located at **3872 West Street, Oakland, California 94608.**

**6.** Defendant, AMWEST FUNDING CORP. "Lender", a California Corporation, is a mortgage broker based in Brea, California. The company provides various mortgage services, including residential finance and mortgage lending.

## JURISDICTION AND VENUE

**7.** This ~~Chancery~~ District K.M. Court has subject matter jurisdiction pursuant to 28 U.S.C § 1331 because the action arises under the laws of the United States, and pursuant to 28 U.S.C § 1332(a)(1) as there exists diversity of all parties and the amount in controversy exceeds $75,000. The Defendant has sufficient contacts with California as they service and foreclose on numerous loans in the state. Venue is proper in this ~~Southern~~ DKM Northern District pursuant to 28 U.S.C. §§ 1391(b)(1) and (2) and 31 U.S.C § 3732(a).

**8.** To state a claim under 42 USC 1983 the Plaintiff must allege facts establishing that a state actor had deprived them of a right, privilege or immunity secured by the United States Constitution or statute. *Eldredge v. Town of Falmouth*, 662 F. 3d 100, 104 (1st Cir 2011);*Tobin v Univ. of Maine Sys.*, 62 F. Supp 2d 162, 165 (D. Me 1999); 42 USC 1983. The Plaintiffs' factual allegations here are both plausible and well documented and in this case, the Plaintiffs' Complaint more than adequately alleges that the Defendant violated numerous federal laws governing Real Estate Mortgage.

**9.** A federal court may exercise jurisdiction over a litigant only when that litigant meets constitutional and prudential standing requirements. *Elk Grove Unified Sch. Dist. v. Newdow*, 542 U.S. 1, 11, 124 S.Ct. 2301, 159 L.Ed.2d 98 (2004). Standing is a "threshold question in every federal case, determining the power of the court to entertain the suit." *Warth v. Seldin*, 422 U.S. 490, 498, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975). *See also Arizona Christian Sch. Tuition Org. v. Winn*, — U.S. ——, 131 S.Ct. 1436, 1442, 179 L.Ed.2d 523 (2011); *City of Los Angeles v. County of Kern*, 581 F.3d 841, 845 (9th Cir.2009).

**BILL OF RIGHTS**

**10.** No person's (to include infants/minors) property shall be taken, damaged or destroyed for or applied to public use without adequate compensation being made, unless by the consent of such person, and , when taken, except for the use of the State, such compensation shall be first made, or secured by deposit of money.

**RULE OF LAW**

**11.** Whereby this cause, being a complaint in exclusive equity jurisdiction, (as it directly involves the property/estate/securities of the Plaintiff), cites the rule of law as follows upon: "Equity having power and the court having jurisdiction, decrees can conform to the exigencies of the suits and award appropriate relief under the complainant's general prayer." *United States v. Cooper*, 217 F. 846, 847 (D. Mont. 1914). "While a court of equity, having once obtained jurisdiction of a cause, will retain it for all purposes and administer complete relief, yet in order to authorize relief which can be obtained in a suit at law, there must be some substantial ground of equitable jurisdiction both alleged and proven; otherwise, a court of equity will not retain jurisdiction and grant a purely legal remedy". *Gentry-Futch Company v. Gentry*, 90 Fla. 595, 106 So. 473; *See also* 10 R. C. L. 370 to 372. "The suit is brought for special relief, and the judgment required to be entered is such as a court exercising jurisdiction in equity alone could render." *Shoshone Min. Co. v. Rutter*, 87 F. 801, 804 (9th Cir. 1898). "[W]here . . . the equitable jurisdiction of the court has properly been invoked . . . the court has the power to decide all relevant matters in dispute and to award complete relief even though the decree includes that which might be conferred by a court of law." *Porter v. Warner Holding Co.*, 328 U.S. 395, 399, 66 S.Ct. 1086, 1090, 90 L.Ed. 1332 (1946).

**BACKGROUND FACTS**

**12.** Plaintiff, Kristina Martinez executed a Promissory Note on April 07, 2023, regarding a loan for $650,000.00. The Original Lender of the April 07, 2023 loan is Amwest Funding Corp. The Deed of Trust of Plaintiff ("Exhibit A, attachment") is dated April 07, 2023 and filed in the Official Records of the Alameda County Recorder's Office on April 14, 2023 as ins# 2023042621.

**13.** The Alameda County Record shows that no Assignments of Deed of Trust have been filed into the public records. ("Exhibit A, attachment").

**14.** Mortgage Electronic Registration Systems, Inc. ("MERS") is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. MERS is the beneficiary under this Security Instrument. MERS is organized and existing under the laws of Delaware.

**15.** Plaintiff files her complaint to meet the burden of pleading pursuant to Fed.R.Civ.P. 8(e), stating a claim upon which relief may be granted. Plaintiff conducted extensive research with the aid of private Forensic Audit as an expert witness in support of this complaint (exhibit A). Plaintiff presents a multi-pronged complaint consisting primarily of fraud, gross negligence in regard to chain of title and forgery. Plaintiff states her claim as follows:

The Mortgage Loan ("Loan") consists of three (3) inseparable parts, that if separated create a nullity. Those documents are as follows:

a) Plaintiff's Deed of Trust ("Deed of Trust")
b) Plaintiff's Promissory Note ("Note")
c) Plaintiff's Intangible Obligation ("the debt"); *i.e.* the rights of ownership over the Plaintiff Mortgage Loan and the payment stream.

**16.** The debt is owned by the New Residential Mortgage Loan Trust 2023-NQM1 Trust ("2023-NQM1 Trust"): however, it can only be determined if the original Martinez Note had been physically delivered to the 2023-NQM1 Trust by checking with the custodian of documents. Until then, there is no evidence that the 2023-NQM1 Trust possessed in any manner the Note before rights to the debt were stripped away shortly after the April 07, 2023 signing. The beneficial interest (ownership) of the Deed of Trust has been recorded in the Official Records of Alameda County Recorder's Office as being in the name of Amwest Funding Corp., the Original Lender of the loan dated April 07, 2023. However, it is clear that Amwest Funding Corp., sold all ownership interest in the debt to the 2023-NQM1 Trust shortly after the April 07, 2023 signing.

**17.** Interest in the  debt is held in the 2023-NQM1 Trust, and the payments under the debt are disbursed to the investors of the 2023-NQM1 Trust who hold certificates to the investment classes into which payments under the debt are scheduled to flow. Therefore, the transfer of beneficial interest in the Deed of Trust by Amwest Funding Corp., might be accomplished, but that beneficial interest is no longer attached to the rights to the debt.

**18.** By the 2023-NQM1 Trust purchasing the debt and doing with it whatever was done, the 2023-NQM1 Trust was exercising rights of ownership over the Mortgage Loan and the payment stream. By exercising rights of ownership over the Mortgage Loan and the payment stream, the 2023-NQM1 Trust was making a claim of rights to <u>all three parts</u> of the Mortgage Loan, a claim which is misplaced.

**19.** The Mortgage Loan only exists through the tangible instruments creating it, the  Note and the Deed of Trust. The sale of the rights to the debt to the 2023-NQM1 Trust without stripping away the rights to the debt  from the rights to the Note could only be accomplished with the accompanying negotiation of the Note and the accompanying assignment of the Deed of Trust to the 2023-NQM1 Trust which has not happened. Whereas the Trust as a standalone party has not lawfully been conveyed the Note, much less been filed of record as a secured creditor.

**20.** The 2023-NQM1 Trust has made and continues to make claims of interest in the rights to the debt and exercises those claims. To exercise claims of rights to the debt, proper assignments of the Deed of Trust should have been accomplished. The 2023-NQM1 Trust is acting as if proper assignments of the Deed of Trust have been accomplished. The assignment of the Deed of Trust is a conveyance of an instrument concerning real property which must be recorded to be acted upon. United States Code considers that anyone certifying that a real estate instrument has been assigned when in fact it has not is guilty of a felonious criminal act[1].

**21.** The 2023-NQM1 Trust has an interest in the debt . However the transfer of rights to either of the two tangible parts of the loan instrument that evidence the debt from Amwest Funding Corp., to the 2023-NQM1 Trust is not memorialized in the Official Records of the Alameda County Recorder's Office in a manner which observes United States Code.

**22.** In point of fact, this is a systemic issue. In the rush to securitize loans, the originating lender failed to check the paper trail and have severed their ability to collect by their inability to show ownership.

---

[1] *Title 18 USC Chapter 47 § 1021*

*Whoever, being an officer or other person authorized by any law of the United States to record a conveyance of real property or any other instrument which by such law may be recorded, knowingly certifies falsely that such conveyance or instrument has or has not been recorded, shall be fined under this title or imprisoned not more than five years, or both.*

## MORTGAGE ELECTRONIC REGISTRATION SYSTEM aka MERS

**23.** Plaintiff produces as Exhibit B the Terms and Conditions of MERS as an insufficient vehicle to transfer beneficial interests in mortgage loans.

**24.** The mortgage industry created the Mortgage Electronic Registration System ('MERS") to allow financial institutions to evade county recording fees, avoid the need to publicly record mortgage transfers, and facilitate the rapid sale and securitization of mortgages *en masse.* Under the MERS construct, MERS members purportedly log all of their mortgage transfers in a private electronic registry, instead of publicly recording the transfer in the local county clerk's office. Financial institutions avoid having to record these transactions by designating MERS Inc. - a shell company with no economic interest in any mortgage loan - as the nominal "mortgagee" of the loan in the public records. The basic theory behind MERS is that, because MERS Inc. serves as a "nominee" (or agent) for most major lenders, it remains the "mortgagee" in the public records regardless of how often the loan is sold or transferred among MERS members.

**25.** The MERS System effectively eliminated homeowners' and the public's ability to track the purchase and sale of properties through the traditional public records system. Instead, this information is now stored in a private database maintained by MERS. However, the MERS database is unreliable and inaccurate. Defendant, along with other MERS members, have failed to consistently register loan transactions in the MERS System, including transfers of ownership interests and servicing rights. Moreover, MERS did not take basic steps to ensure the data's accuracy and integrity.

**26.** MERS can file a "Notice of Assignment" of the "Security Instrument" but MERS cannot negotiate the Negotiable Instrument since MERS never came into possession of the Negotiable Instrument with Plaintiff. The fact here that MERS assigned the Security Instrument verifies that bifurcation (separation) of the Security Instrument from the Negotiable Instrument has taken place. Since this was done, the Negotiable Instrument no longer has a "Secured" status and as such the Negotiable Instrument is now an "Unsecured" Indebtedness. Local Laws of Recordation require the recording of the "Notices of Assignments" that reflect the negotiation of the Negotiable Instrument, but failure to file in public records does not render the Negotiable Instrument invalid.

**27.** The failure to file establishes bifurcation of the Security Instrument from the Negotiable Instrument and renders the Security Instrument a nullity. The assignment of the mortgage, without an assignment of the debt, is a nullity. "The note and mortgage are inseparable; the former as essential, the latter as an incident. An assignment of the note carries the mortgage with it, while an assignment of the latter alone is a nullity." *Id. Van Burkleo v. Southwestern*, Tex. Civ. App., 39 S.W. 1085, 1087; *Sheldon v. Sill*, 49 U.S. 441 (1850) 49 U.S. 441: "The assignment of the mortgage, without an assignment of the debt, is a nullity." *See Kirby v. Williams*, 230 F.2d 330 (United States Court of Appeals Fifth Circuit) February 10, 1956, Once there is nullity of the Security Instrument it can never be regained as the Negotiable Instrument has been rendered to be an "Unsecured" Indebtedness. The link between the Negotiable Instrument and the Security Instrument can be proved up by following the Uniform Commercial Code or the states equal by showing the properly filed chain of Endorsements. This might possibly prove "Holder/Holder In Due Course" status, and if such is proved up then possibly there is a method to achieve a legal collection action of a money judgment but the right to trigger a foreclosure contained within the Security Instrument is out of reach.

**28.** Inevitably, in all of MERS actions, the venerable maxim *"nemo dat quod non habet,"* *i.e.*, one cannot give what one does not have, must come into play. *See Mitchell v. Hawley*, 83 U.S. 544, 550 (1872); *Chase v. Sanborn*, 5 F. Cas. 521, 523 (Clifford, Circuit Justice, C.C.D.N.H. 1874) (No. 2,628).

It is stated in the MERS Procedures Manual, Release 19.0, dated June 14, 2010:

Page 63 – Transfer of Beneficial Rights to Member Investors, Overview:

"Although MERS tracks changes in ownership of the beneficial rights for loans registered on the MERS System, MERS cannot transfer the beneficial rights to the debt. The debt can only be transferred by properly endorsing the promissory note to the transferee." (emphasis added).

It is stated in the MERS Residential Marketing Kit, Terms And Conditions:

2. …MERS shall serve as mortgagee of record with respect to all such mortgage loans solely as a nominee, in an administrative capacity, for the beneficial owner or owners thereof from

time to time. MERS shall have no rights whatsoever to any payments made on account of such mortgage loans, to any servicing rights related to such mortgage loans, or to any mortgaged properties securing such mortgage loans. MERS agrees not to assert any rights (other than rights specified in the Governing Documents) with respect to such mortgage loans or mortgaged properties. References herein to "mortgage(s)" and "mortgagee of record" shall include deed(s) of trust and beneficiary under a Mortgage and any other form of security instrument under applicable state law. (emphasis added)

6. MERS and the Member agree that: (i) the MERS System is not a vehicle for creating or transferring beneficial interests in mortgage loans… (emphasis added)

**27.** The home-loan industry has had a central electronic database since 1997 to track mortgages as they are bought and sold. It's run by Mortgage Electronic Registration System, or MERS, a subsidiary of Vienna, Virginia based MERSCORP Inc., which is owned by mortgage companies and Banks. No Tracking Mechanism MERS has 3,246 member companies and about half of outstanding mortgages are registered with the company, including loans purchased by government-sponsored entities Fannie Mae, Freddie Mac and Ginny Mae, said R.K. Arnold, the company's CEO. For about half of U.S. mortgages, there is no tracking mechanism.

**28.** MERS does not keep any original mortgage Notes or contract securities due to the originals to be destroyed through securitization. MERS rules don't allow members to submit lost-note affidavits in place of mortgage notes, Arnold said. "A lot of companies say the note is lost when it's highly unlikely the note is lost," Arnold said. "Saying a note is lost when it's not really lost is wrong." Lents' attorney, Jane Raskin of Raskin & Raskin in Miami, said she has no idea who owns Lents' mortgage note. "Something is wrong if you start from what I think is the reasonable assumption that these banks are not losing all of these notes," Raskin said. "As an officer of the court, I find it troubling that they've been going in and saying we lost the note, and because nobody is challenging it, the foreclosures are pushed through the system." In *Landmark National Bank v. Kesler*, 2009 Kan. LEXIS 834, the Kansas Supreme Court held that a nominee company called MERS has no right or standing to bring an action for foreclosure.

**29.** MERS is an acronym for Mortgage Electronic Registration Systems, a private company that registers mortgages electronically and tracks changes in ownership. The significance of the holding is that if MERS has no standing to foreclose, then nobody has standing to foreclose – on 60 million mortgages. That is the number of American mortgages currently reported to be held by MERS. Over half of all new U.S. residential mortgage loans are registered with MERS and recorded in its name. Holdings of the Kansas Supreme Court are not binding on the rest of the country, but they are dicta of which other courts take note; and the reasoning behind the decision is sound. Eliminating the "Straw Man" Shielding Lenders and Investors from Liability, The development of "electronic" mortgages managed by MERS went hand in hand with the "securitization" of mortgage loans – chopping them into pieces and selling them off to investors.

**30.** In the heyday of mortgage securitizations, before investors became privy to their risks, lenders would slice up loans, bundle them into "financial products" called "collateralized debt obligations" (CDOs), ostensibly insure them against default by wrapping them in derivatives called "credit default swaps," and sell them to pension funds, municipal funds, foreign investment funds, and so forth. Banks still do this securitization process. There were many secured parties, and the pieces kept changing hands; but MERS supposedly kept track of all these changes electronically. MERS would register and record mortgage loans in its name, and it would bring foreclosure actions in its name. MERS not only facilitated the rapid turnover of mortgages and mortgage- backed securities, but it has served as a sort of "corporate shield" that protects investors from claims by borrowers concerning predatory lending practices.

**31.** California attorney Timothy McCandless describes the problem like this: "[MERS] has reduced transparency in the mortgage market in two ways. First, consumers and their counsel can no longer turn to the public recording systems to learn the identity of the holder of their note. Today, county recording systems are increasingly full of one meaningless name, MERS, repeated over and over again. But more importantly, all across the country, MERS now brings foreclosure proceedings in its own name – even though it is not the financial party in interest. This is problematic because MERS is not prepared for or equipped to provide responses to consumers' discovery requests with respect to predatory lending claims and defenses.

**32.** In effect, the securitization conduit attempts to use a faceless and seemingly innocent proxy with no knowledge of predatory origination or servicing behavior to do the dirty work of seizing the consumer's home… So imposing is this opaque corporate wall, that in a "vast" number of foreclosures, MERS actually succeeds in foreclosing without producing the original note – the legal sine qua non of foreclosure – much less documentation that could support predatory lending defenses." The real parties in interest concealed behind MERS have been made so faceless; however, that there is now no party withstanding to foreclose. The Kansas Supreme Court stated that MERS' relationship "is more akin to that of a straw man than to a party possessing all the rights given a buyer." The court opined: "By statute, assignment of the mortgage carries with it the assignment of the debt". Indeed, in the event that a mortgage loan somehow separates interests of the note and the deed of trust, with the deed of trust lying with some independent entity, the mortgage may become unenforceable.

**33.** As stated above, the practical effect of splitting the deed of trust from the promissory note is to make it impossible for the holder of the note to foreclose unless the holder of the deed of trust is the agent of the holder of the note. Without the agency relationship, the person holding only the note lacks the power to foreclose in the event of default. The person holding only the deed of trust will never experience default because only the holder of the note is entitled to payment of the underlying obligation. The mortgage loan becomes ineffectual when the note holder did not also hold the deed of trust." [Citations omitted; emphasis added.] MERS, as straw man, lacks standing to foreclose, but so does original lender, although it was a signatory to the deal. The lender lacks standing because title had to pass to the secured parties for the arrangement to legally qualify as a "security." They cannot satisfy the basic requirement of contract law that a plaintiff suing a written contract must produce a signed contract proving he is entitled to relief. *See* Exhibit B.

## I. <u>FRAUD IN THE EXECUTION</u>

**34.** A necessary element of the defense of fraud in the execution is reasonable reliance. That is, when plaintiff asserts that the defendant misrepresented the nature of the contract, the contract is not considered void due to the fraud if the plaintiff had a reasonable opportunity to discover the true terms of the contract. The contract is only considered void when the plaintiff's failure to discover

the true nature of the document executed was without negligence on the plaintiffs part. *See Rosenthal v. Great Western Fin. Securities Corp.* (1996) 14 Cal.4th at pp. 419-420,423. More succinctly, "[f]raud in the execution" arises when a party executes an agreement "with neither knowledge nor reasonable opportunity to obtain knowledge of its character or its essential terms." Uniform Commercial Code § 3-305(2)(c); *see* Restatement (Second) of Contracts § 163 (1981).

**35.** "Where a mistake of one party at the time a contract was made as to a basic assumption on which he made the contract has a material effect on the agreed exhange of performances that is adverse to him, the contract is voidable by him if he does not bear the risk of the mistake under the rule stated in § 154, and

    a) the effect of the mistake is such that enforcement of the contract would be unconscionable, or

    b) the other party had reason to know of the mistake or his fault caused by the mistake.[2]

**36.** AMWEST FUNDING CORP. failed to disclose that the promissory note the Plaintiff signed was a security and not a promissory note as defined by 15 U.S.C. § 78(c)(10)[3]. A promissory note cannot exceed the life span of nine months and failure to disclose the true nature of the note constitutes lack of "full disclosure" required in The Truth in Lending Act which gives an individual the right to signature rescission.[4] Plaintiff concedes that the implied covenant of good faith and fair dealing is a contractual relationship and does not give rise to an independent duty of care. Rather, " '[t]he implied covenant of good faith and fair dealing is limited to assuring compliance with the express terms of the contract, and cannot be extended to create obligations not contemplated by the contract.' " (*Pasadena Live v. City of Pasadena* (2004) 114 Cal.App.4th 1089,

---

[2] Restatement (Second) of Contracts § 153

[3] The term "security means any not ......, but shall not include currency or any note, draft, bill of exchange, or bankers acceptance which has a maturity at the time of issuance of not exceeding nine months, exclusive of days of grace, or any renewal thereof the maturity of which is likewise limited.

[4] In *Reves v. Ernst Young*, 494 U.S. 56, 63 (1990), the Supreme Court adopted the Second Circuit's "family resemblance test" for determining whether or not a note is a security. The test begins with the presumption that "any note with a term of more than nine months is a security." 11. The presumption is rebuttable, if the issuer can demonstrate that the note in question "bears a strong family resemblance to an item on the judicially crafted list of exceptions." *Id.* at 63-64. Examples of notes which are not normally considered securities include notes secured by home mortgages. However, fractionalized notes have been considered securities. *See, Underhill v. Royal*, 769 F.2d 1426, 1431 (9th Cir. 1985). Whether a note is a security must be determined on a case-by-case basis. *See, S.E.C. v. R. G. Reynolds Enterprises, Inc.*, 952 F.2d 1125, 1131 (9th Cir. 1991); *Leyva v. Superior Court*, 164 Cal.App.3d 462 (1985).

1094, 8 Cal.Rptr.3d 233.) The Plaintiff thus, hinges her allegation of fraud committed by the defendant, to the letter of the contract and the deceptiveness therein. The use of financial audits and forensic professionals in order to "comprehend" a mortgage contract is nonsensical. Plaintiff restates that failure to disclose is constructive fraud and fraud vitiates all contracts.

Plaintiff further alleges:

(1) Defendant purported to have given consideration for the Plaintiff's accommodation negotiable instrument in the form of real money purportedly executing an underlying obligation (indebtedness) between the parties to the contract. The Defendant concealed in the presentation for the terms of the Deed of trust contract(s) a cross acceptance of which the Sureties, the issuers of the negotiable instrument, would accept ownership of the real property collateral for executing an accommodation negotiable instrument on behalf of the Defendant, the accommodated party. The Defendant used Sureties' accommodation parties promise to put the accommodated into funds as surety and a personal property security interest in the sureties' pledged security instrument as collateral for the purpose of negotiating a personal property (payment intangible) transaction between the Defendant and Plaintiff for a service release premium without recourse to be received through a table funded transaction at the closing of the purported loan.

(2) Defendant concealed a third party Securitizer as well as the terms of the Securitization Agreements, including, *inter alia*:

    a)   Financial Incentives paid;

    b)   existence of Credit Enhancement Agreements, and

    c)   existence of Acquisition Provisions.

(3) By concealing this securitization, the true character of the purported loan in this way had a materially negative effect on the Plaintiff that was known by Defendant but not disclosed.

(4) Defendant knew or should have known that there was no meeting of the minds between the issuer Surety and the purported depository bank or lender, the Defendant, regarding the true character of the purported loan and that most importantly it created no underlying obligation between the parties to contract.

1  (5) Defendant knew or should have known that had the truth been disclosed, Surety would not have
2  pledged a security agreement to the Defendant, the accommodated party for the purpose of an
3  alternative means of collection.

4  (6) Defendant intended to induce Sureties based on these material misrepresentations and improper
5  disclosures.

6  (7) Plaintiff's and Sureties reasonable reliance upon the misrepresentations was detrimental. But for
7  failure to disclose the true and material terms of the transaction, Sureties could have alerted to
8  issues of concern. Plaintiff and Sureties would have known of Defendant's true intentions and
9  profits from the proposed purported loan. Plaintiff and Sureties would have known that the actions
10 of Defendant would have an adverse effect on the value of Plaintiff's and Sureties home by
11 clouding the title.

12 (8) Defendant's failure to disclose the material terms of the transaction induced Sureties to enter
13 into the purported loan and accept the services as alleged herein.

14 (9) Defendants were aware of the misrepresentations and profited from them.

15 (10) As a direct and proximate result of the misrepresentations and concealment Plaintiff has been
16 damaged in an amount to be proven at trial, including but not limited to costs of Loan, damage to
17 Plaintiff's financial security, emotional distress, and Plaintiffs incurred costs.

18 (11) Defendant is guilty of malice, fraud and/or oppression. Defendants' actions were malicious and
19 done willfully in conscious disregard of the rights and safety of Plaintiff in that the actions were
20 calculated to injure the Plaintiff. As such, Plaintiff is entitled to recover, in addition to actual
21 damages, punitive damages to deter them from engaging in future misconduct.

22     **37.** To enforce a note under the method most commonly employed, the person must be the
23 "holder" of the note. UCC § 3–301(i)[5].

24

25

---

26 [5] Another method is uncommon and does not require possession of the note. Under UCC § 3–301(iii), a person may be a "person
27 entitled to enforce the note" if, among other things, "the person cannot reasonably obtain possession of the instrument because the
instrument was destroyed, its whereabouts cannot be determined, or it is in the wrongful possession of an unknown person or a
person that cannot be found or is not amenable to service of process." UCC § 3–309(a)(3). The burden of showing these factual
28 predicates is on the person attempting to enforce the negotiable instrument. Here, however, the Note is not alleged to be lost or stolen.

1   **38.** Under traditional contract law and negotiable instruments law, personal property or a

2   negotiable instrument transferred by virtue of a misrepresentation may subsequently be transferred

3   to a bona fide purchaser for value or a holder in due course — innocent third parties who take in

4   good faith and without notice of any defects in the chain of ownership. The defrauded party may

5   recover the property from the bona fide purchaser or avoid honoring the negotiable instrument held

6   by the holder in due course only if the initial transaction was "void" rather than merely

7   "voidable." *See* J. Calamari J. Perillo, Contracts § 9-22, at 293; J. White R. Summers, Uniform

8   Commercial Code § 14-9, at 572-75 (2d ed. 1980). Fraud in the execution results in the agreement

9   being void ab initio. *See* 12 Williston on Contracts § 1489, at 341-42.

10   ## II. BREACH OF CONTRACT

11   **39.** Paragraph 1 of the Plaintiff's Note states "*I understand that the Lender may transfer this*

12   *Note. The Lender or Anyone who takes this Note by transfer and who is entitled to receive payments*

13   *under this Note is called the "Noteholder.""* Under the Consumer Credit Protection Act Title 15

14   USC Chapter 41 § 1641(g)[6]: any transfers of the Mortgage Loan to the 2023-NQM1 Trust would

15   be in violation of Federal Statute, if those transfers had not been recorded in the Official Records of

16   the Alameda County Recorder's Office within 30 days along with notification of Plaintiff that the

17   transfers had occurred.  As there are no recorded assignments of the Deed of Trust to the 2023-

18   NQM1 Trust within 30 days of April 07, 2023, either there has been a violation of Federal Law or

19   the 2023-NQM1 Trust, who have an interest in the debt, are not the owners of either the Note or the

20   Deed of Trust.

21   **40.** There have been no assignments of the Martinez Deed of Trust to the 2023-NQM1 Trust

22   recorded in the Official Records of the Alameda County Recorder's Office, although CA State Law

---

[6] Title 15 USC Chapter 41 § 1641(g)

   ***(g) Notice of new creditor***
   ***(1) In general***
   In addition to other disclosures required by this subchapter, not later than 30 days after the date on which a
   mortgage loan is sold or otherwise transferred or assigned to a third party, the creditor that is the new owner or
   assignee of the debt shall notify the borrower in writing of such transfer, including—
   *(A) the identity, address, telephone number of the new creditor;*
   *(B) the date of transfer;*
   *(C) how to reach an agent or party having authority to act on behalf of the new creditor;*
   *(D) the location of the place where transfer of interest in the debt is recorded; and*
   *(E) any other relevant information regarding the new creditor.*

1 requires assignments memorializing the sale and negotiations of the Martinez Note along with the

2 acquiring of rights. Any electronic transfers of the Martinez Deed of Trust that may have been

3 executed without recording within the Official Records of the Alameda County Recorder's Office

4 are void under Uniform Electronic Transactions Act (UETA) USC § 15-96-1-7003[7].

5 **41.** The New Residential Mortgage Loan Trust 2023-NQM1 Trust has an interest in the

6 Martinez Intangible Obligation (the debt) ; however, according to CA State Law, the New

7 Residential Mortgage Loan Trust 2023-NQM1 Trust can only be entitled to enforce the Deed of

8 Trust if they took the Martinez Deed of Trust by way of assignments pursuant to Cal. Gov. Code

9 §27288.1[8].The Deed of Trust must have been duly assigned to the 2023-NQM1 Trust for the 2023-

10 NQM1 Trust to be entitled to enforce the Deed of Trust[9]. The 2023-NQM1 Trust, who has an

11 interest in the debt, can not show that accompanied negotiations of the rights to the Note and

12 accompanied transfers of the rights to the Deed of Trust have occurred. The rights to the debt have

13 been stripped from the rights to the Note and the rights to the Deed of Trust.

14 **42.** Enforceability of a lien is dependent upon compliance with state law and local laws of

15 jurisdiction and, contrary to popular misconception, does not fall under the jurisdiction of UCC

16 Article 9 or state equivalent Cal .Com. Code § 9109[10].  The purpose of an "Assignment of Deed of

17

---

18 [7] *(a) Excepted requirements*

19 *The provisions of section 7001 of this title shall not apply to a contract or other record to the extent it is governed by*

*(3) the Uniform Commercial Code, as in effect in any State, other than sections 1–107 and 1–206 and Articles 2 and 2A.*

20 [8] *All documents described in this section now or hereafter authorized by law to be recorded in the official records of a county shall contain the following information in addition to any information as may be required by law pertaining to the particular document:*

21 *(a) If the document effects or evidences a transfer or encumbrance of an interest in real property, the name or names in which the interest appears of record, except that a notice of assessment recorded pursuant to Section 3114 of the Streets and Highways Code, a*

22 *notice of special tax lien recorded pursuant to Section 3114.5 of the Streets and Highways Code, and a notice of award of contract recorded pursuant to Section 5248 of the Streets and Highways Code, shall show the name or names of the assessed owners as they appear on the latest secured assessment roll.*

23 [9] *Cal. Civ. Code § 1213 – Record of conveyances; constructive notice; recording certified copies; effect*

*Every conveyance of real property or an estate for years therein acknowledged or proved and certified and recorded as prescribed*

24 *by law from the time it is filed with the recorder for record is constructive notice of the contents thereof to subsequent purchasers and mortgagees; and a certified copy of such a recorded conveyance may be recorded in any other county and when so recorded the*

25 *record thereof shall have the same force and effect as though it was of the original conveyance and where the original conveyance has been recorded in any county wherein the property therein mentioned is not situated a certified copy of the recorded conveyance*

26 *may be recorded in the county where such property is situated with the same force and effect as if the original conveyance had been recorded in that county.*

[10] *UCC §9-109(d) [Inapplicability of article.]*

27 *This article does not apply to:*

*(11) the creation or transfer of an interest in or lien on real property, including a lease or rents thereunder, except to the extent*

28 *that provision is made for:*

*(A) liens on real property in Sections 9-203 and 9-308;*

*(D) security agreements covering personal and real property in Section 9-604;*

Trust" is to simply memorialize the purported sale of the Martinez Tangible Promissory Note and the acquiring of rights; it does not cause the sale nor the acquiring of rights. The sale is to be done in accordance with statutory requirement of law Cal. Com. Code § 7501[11], which has not happened. The acquiring of rights is to be done in accordance with statutory requirement of law Cal. Com. Code § 3203, which has not happened.

**43.** With Amwest Funding Corp., selling only the debt to the 2023-NQM1 Trust, the Promissory Note is no longer eligible for negotiation per Cal. Com. Code § 3203 (d)[12] as it is now less than the full value. In order to claim the full value of the Tangible Promissory Note, a party would need to both be named·as payee to the Tangible Promissory Note and have sole claim to the debt. With no negotiation, transfer, and delivery of the Tangible Promissory Note evidenced through proper indorsement with the 2023-NQM1 Trust being named to the Tangible Promissory Note, a true "Assignment of Deed of Trust" could not take place. "Where an assignment is merely voidable at the election of the assignor, third parties, and particularly the obligor, cannot ... successfully challenge the validity or effectiveness of the transfer." (7 Cal.Jur.3d (2012) Assignments, § 43.) This statement implies that a borrower can challenge an assignment of his or her note and deed of trust if the defect asserted would void the assignment. (*See Reinagel v. Deutsche Bank National Trust Co.* (5th Cir.2013) —— F.3d ——, —— [2013 WL 3480207, at p. *3] [following majority rule that an obligor may raise any ground that renders the assignment void, rather than merely voidable].)

**44.** The borrower, Kristina Martinez, is NOT the party that created the transferable record that was sold. A third-party, the Account Debtor, created this debt using the Intangible payment stream of the Promissory Note. Amwest Funding Corp., was acting as the Account Debtor pursuant to Cal. Com. Code § 9102 (3)[13] when they created and sold a transferable record to New Residential

---

[11] *Cal. Com. Code § 7501 – Form of negotiation for tangible and electronic documents of title; requirements of "due negotiation"*
*(a) The following rules apply to a negotiable tangible document of title:*
*(1) If the document's original terms run to the order of a named person, **the document is negotiated by the named person's indorsement and delivery**... (emphasis added)*

[12] *Cal. Com. Code § 3203 – Transfer of instrument; rights acquired by transfer.*
*(d) If a transferor purports to transfer less than the entire instrument, negotiation of the instrument does not occur. The transferee obtains no rights under this division and has only the rights of a partial assignee.*

[13] *Cal. Com. Code § 9102. Definitions and index of definitions*
          *(a) In this division:*

1  Mortgage Loan Trust 2023-NQM1. The consequences of the rights to the debt being stripped away
2  from the beneficial interests of the Note and Deed of Trust are that the Note is without a debt to
3  evidence, and the Deed of Trust is without a debt to enforce conditions against. The beneficial
4  interest of Amwest Funding Corp., did not include rights to the debt shortly after the April 07, 2023
5  signing.  Amwest Funding Corp., can assign beneficial interest in the Deed of Trust, albeit with no
6  the rights to the debt, to whomever they please.

7  **45.** Any electronic transfers of the Deed of Trust that may have been executed without
8  recording within the Official Records of the Alameda County Recorder's Office are void under
9  Uniform Electronic Transactions Act (UETA) USC § 15-96-1-7003[14] Plaintiff reiterates that the
10  United States Code considers that anyone certifying that a real estate instrument has been assigned
11  when in fact it has not is guilty of a felonious criminal act. *Supra* note 1.

12  ### III. NEGLIGENT NEGOTIATION PERSUANT TO UCC § 9

13  **46.** The Note has not been indorsed by the Original Lender, Defendant., this evidences that
14  no negotiation under Cal. Com. Code § 7501 (*supra* note 9) concerning negotiable instruments has
15  occurred.  Clearly the Defendant, has released none of its interest in the Note. The Defendant,
16  transferred its rights to the debt  to the 2023-NQM1 Trust and retained its rights to the Note.  The
17  rights to the debt were transferred to the 2023-NQM1 Trust and ownership of the  Note remained
18  with Amwest Funding Corp.,, without rights to the debt.

19  **47.** Defendant, has not released the Note; however, Amwest Funding Corp., has released the
20  debt to the 2023-NQM1 Trust. The Deed of Trust as a contract can only enforce its contractual
21  terms against the obligation evidenced by the  Note.  The Deed of Trust is part of the overall
22  Mortgage Loan Instrument. While retaining the Note, Amwest Funding Corp., also released the debt
23  to the 2023-NQM1 Trust. When Amwest Funding Corp., retained the Note while releasing the debt
24  to the 2023-NQM1 Trust, Amwest Funding Corp., purported to transfer <u>less than the entire</u>

25

26  (3) *"Account debtor" means a person obligated on an account, chattel paper, or general intangible.* **<u>The term does not include</u>**
   **<u>persons obligated to pay a negotiable instrument</u>**, *even if the instrument constitutes part of chattel paper.* (emphasis added)
27  [14] *(a) Excepted requirements*

   *The provisions of section 7001 of this title shall not apply to a contract or other record to the extent it is governed by—*
28  *(3) The Uniform Commercial Code, as in effect in any State, other than sections 1–107 and 1–206 and Articles 2 and 2A.*

Mortgage Loan Instrument.

**48.** Article 9 includes rules, for example, governing the effect of the transfer of a note on any security given for that note such as a mortgage or a deed of trust[15]. As a consequence, Article 9 must be consulted to answer many questions as to who owns or has other property interest in a promissory note. From this it follows that the determination of who holds these property interests will inform the inquiry as to who is a real party in interest in any action involving that promissory note[16]. "The "transfer" concept is not only bound up in the enforcement of the maker's obligation to pay the debt evidenced by the note, but also in the ownership of those rights. Put another way, one can be an owner of a note without being a "person entitled to enforce."" *Veal v. American Home Mortgage Servicing, Inc.* (In re Veal), 450 B.R. 897, 912 (B.A.P. 9th Cir. 2011)

**49.** With very few exceptions, the same rules that apply to transactions in which a payment right serves as collateral for an obligation also apply to transactions in which a payment right is sold outright. See UCC § 9–203. Rather than contain two parallel sets of rules—one for transactions in which payment rights are collateral and the other for sales of payment rights—Article 9 uses nomenclature conventions to apply one set of rules to both types of transactions. This is accomplished primarily by defining the term "security interest," found in UCC § 1–201(b)(35),

**50.** to include not only an interest in property that secures an obligation, but also the right of a purchaser of a payment right such as a promissory note. Cf. UCC § 1–201(b)(35)[17]

**51.** Under Cal. Com. Code § 3203 (d)(*Supra* 10), a negotiation of the Note or a negotiation of the Loan can not occur without the transfer of <u>the entire interest</u> in the Note or transfer of <u>the entire interest</u> in the Loan. When the Defendant, retained all interest in the Note yet released the debt to the 2023-NQM1 Trust, Amwest Funding Corp., purported to transfer <u>less than the entire</u>

---

[15] UCC § 9–109(a)(3) states that Article 9 applies to any sale of a "promissory note," which is defined in § 9–102(a)(65) as "an instrument that evidences a promise to pay a monetary obligation, [or] does not evidence an order to pay...." In turn, an "instrument" under Article 9 is defined as "a negotiable instrument or any other writing that evidences a right to the payment of a monetary obligation, is not itself a security agreement or lease, and is of a type that in ordinary course of business is transferred by delivery with any necessary indorsement or assignment." UCC § 9–102(a)(47).

[16] See UCC § 9–203(g) ("The attachment of a security interest in a right to payment or performance secured by a security interest or other lien on personal or real property is also attachment of a security interest in the security interest, mortgage, or other lien.").

[17] The term "security interest" also "includes any interest of a consignor and a buyer of accounts, chattel paper, a payment intangible, or a promissory note in a transaction that is subject to Article 9.

1  Martinez Mortgage Loan Instrument, and negotiation of either the Loan or the Note did not occur.
2  Besides the fact that an indorsement would not accomplish a negotiation of the Note, Amwest
3  Funding Corp., still no longer has an entire interest in the Note. Amwest Funding Corp., must have
4  an entire interest in the Note for a negotiation to occur. The intangible interest in the Note has been
5  transferred to the 2023-NQM1 Trust. Amwest Funding Corp., can no longer claim an entire interest
6  in the Note. Amwest Funding Corp., can not accomplish a negotiation of the Note.

7  **52.** Under Cal. Com. Code § 7501, Amwest Funding Corp., is the only party that could have
8  accomplished a negotiation of the Martinez Note. However, now Amwest Funding Corp., can not
9  accomplish a negotiation of the Martinez Note. Under Cal. Com. Code § 3203 (d), a negotiation of
10  the Martinez Note can not occur until Amwest Funding Corp., regains an entire interest in the
11  Martinez Note. *Supra* 9. Under long existing contract law, if the terms of a contract are violated,
12  affecting the conditions under which the Payor is obligated, without the properly evidenced consent
13  of the Payor, that contract is void and cannot be returned to without the consent of the Payor. Even
14  if ownership of the Note and the Deed of Trust could be rejoined, the Deed of Trust, as a now
15  unenforceable contract, no longer being tied to an obligation to enforce its contractual terms over,
16  can not be returned to being an enforceable contract without Plaintiff's consent.

17  **53.** The unenforceable rights to the Note remain with Defendant., while the rights to the
18  Deed of Trust have been released. The Martinez Deed of Trust is an unenforceable contract, no
19  longer tied to an obligation to enforce its contractual terms over. The Defendant, retained no
20  beneficial interest in the debt after selling the debt to the 2023-NQM1 Trust shortly after the April
21  07, 2023 signing. No acceptable assignments of the Martinez Deed of Trust to the New Residential
22  Mortgage Loan Trust 2023-NQM1 Trust have been recorded into the Official Records of the
23  Alameda County Recorder's Office. There is no evidence of negotiations of the Note to the 2023-
24  NQM1 Trust. With no properly recorded owner of the Deed of Trust, there is no one to enforce the
25  conditions over the debt which is no longer evidenced by the Note. The debt is no longer secured by
26  the Plaintiff's Property.

27

28

## CONCLUSION

**54.** In conclusion, the terms of the Deed of Trust have been violated and the Deed of Trust is unenforceable. Because the rights to the Deed of Trust were separated from the rights to the debt, and will remain separate, the Deed of Trust is left with no way to enforce its conditions over the obligation which should be evidenced by the Note, making the Deed of Trust an unenforceable contract.

**55.** With Interest in the debt stripped away and no way to enforce the conditions under the Deed of Trust, the Mortgage Contract is a Nullity.

## PRAYER and RELIEF

**WHEREFORE PREMISES CONSIDERED** as Prayer for Relief, and for the foregoing reasons, Plaintiffs pray that Defendants be cited to appear and answer herein, and that upon final hearing, Plaintiffs be awarded judgment:

- Defendant return the GENUINE ORIGINAL PROMISSORY NOTE  [by Plaintiff to Defendants, with a full disclosure of accounting of such] to Plaintiff forthwith;

- If Defendant is not able to return the GENUINE ORIGINAL PROMISSORY NOTE to Plaintiff forthwith then Defendant is therefore admitting to Defendant's unlawful attempt to convert real property without cause and/or right.

-  If Defendant is not able to return the GENUINE ORIGINAL PROMISSORY NOTE to Plaintiff forthwith then Defendant is therefore admitting to Defendant's unlawful attempt to convert real property without cause and/or right.

- Defendant present to Plaintiff and this Court and Affidavit stipulating that Defendant has NO RIGHTS to the real property in question.

- Defendant returns DEED and all other documents pertaining to ownership of real property in question to Plaintiff.

- If Defendant does not STATE THE CLAIM UNDER PENALTY OF PERJURY that Defendant is the CREDITOR in this instant matter, Defendant agrees to accept Judgment by Default in favor of Plaintiff.

- Declaring that Defendants lack any interest in the subject property which would permit them to foreclose, evict, or attempt to foreclose or evict, the trust deed and / or to sell the subject property;

- Declaring that the trust deed is not a lien against the subject properties, ordering the immediate release of the trust deed of record, and quieting title to the subject properties in Plaintiffs and against Defendants and all claiming by, though, or under them;

- A recoupment of any and all wrongfully or improperly collected fees and payments to Defendants to which it had no right;

- Pre-and post-judgment interest at the maximum rate allowed by law;

- Monetary relief over $100,000 but not more than the face amount of Plaintiffs Security tendered to Defendant;

- Such other and further relief at law and / or in equity to which Plaintiffs may be justly entitled including but not limited to damages within the jurisdictional limits of this Court, together with pre-judgment and post-judgment interest as are allowed by law.

- Withstanding Judicial Action:Collector(s) produce admissible evidence/Competent fact witnesses.

Plaintiff has met its burden of Fed.R.Civ.Pr 12(b)(6).

Dated: ___10th___ July, 2024

By:_____
Kristina Martinez, Pro Per
3872 West Street,
Oakland, California [94608]

- 23 -

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that a true and correct copy of the foregoing is being forwarded this ___ day of July 2024, the foregoing was served on Defendants by way of certified mail return receipt requested, to all parties naming AMWEST FUNDING CORP., certified no. _____ and its Third-Party Agents, with a known address of:

AMWEST FUNDING CORP.
6 POINTE DRIVE
SUITE 300
BREA, CALIFORNIA 92821

By: _Kristina Martinez_
Kristina Martinez, Pro Per
3872 West Street,
Oakland, California [94608]

# EXHIBIT A

REPORT REQUESTED BY:
Kristina Martinez
3872 West Street
Oakland, CA 94608

### AFFIDAVIT OF JOSEPH R. ESQUIVEL JR.

I, Joseph R. Esquivel Jr, declare as follows:

1. I am over the age of 18 years and qualified to make this Affidavit.

2. I am a licensed private investigator in the State of Texas, License # A20449.

3. I make this Affidavit based on my own personal knowledge.

4. I make this Affidavit in support of Mortgage Compliance Investigations Chain of Title Analysis & Mortgage Fraud Investigation requested by Kristina Martinez regarding the Loan Instruments and the associated real property located at 3872 West Street, Oakland, CA 94608, as referenced in the Alameda County Record.

5. I have no direct or indirect interest in the outcome of the case at bar for which I am offering my observations.

6. I have personal knowledge and experience in the topic areas related to the securitization of mortgage loans, real property law, Uniform Commercial Code practices, predatory lending practices, assignment and assumption of securitized loans, creation of trusts under deeds of trust, pooling and servicing agreements, issuance of asset-backed securities and specifically mortgage-backed securities by special purpose vehicles in which an entity is named as trustee for holders of certificates of mortgage backed securities, the foreclosure process of securitized and non-securitized residential mortgages in both judicial and non-judicial states, and the various forms of foreclosure-related fraud.

7. I perform my research through the viewing of loan level data and Corporate/Trust Documents that have been obtained by Housing Mortgage Consultants (William McCaffrey). I then analyze the information for the purpose of the investigation.

8. I have the training, knowledge and experience to perform these searches and understand the meaning of these records and documents with very reliable accuracy.

---

9. I am available for court appearances, in person or via telephone for further clarification or explanation of the information provided herein, or for cross examination if necessary.

10. Mr. McCaffrey of Housing Mortgage Consultants is also available for court appearances, in person or via telephone, for further clarification or explanation of the information provided herein, or for cross examination if necessary.

11. I have been hired by Kristina Martinez to investigate and review documents pertaining to the property located at 3872 West Street, Oakland, CA 94608. These documents have been obtained from the Alameda County Recorder's Office and from Amwest Funding Corp. Those documents are as follows:

| Exhibit | Document Name | Date Recorded into the Public Records | Document Number |
|---|---|---|---|
| A | Note received from Amwest Funding Corp., on May 24, 2024 | *- Not Recorded -* | 2000078816 |
| B | Deed of Trust | April 14, 2023 | 2023042621 |
| C | Voluntary Liens Report | *-Not Recorded-* | |

12. On May 29, 2024, the Kristina Martinez payment stream (The Debt) was identified in the New Residential Mortgage Loan Trust 2023-NQM1. This trust is a Special Purpose Vehicle (SPV) which was created for the purpose of issuing mortgage-backed securities.

13. The returns that are paid on the mortgage-backed securities are derived from "slices" ("tranches") of the pool of comingled payments.  "Pooling" (commingling) these trust assets to back financial instruments purportedly serve as the foundation for the instruments (as "securities") being offered and sold to secondary-market investors, in the process known as "securitization."

14. The information contained herein was derived by research through professional services, and by reviewing the Loan Level Data obtained from the Citi Bank Investor Online Portal on May 29, 2024, by independent third-party securitization and banking expert, William McCaffrey (Housing Mortgage Consultants Inc.), who specializes in locating Residential Mortgage-Backed Securities, (RMBS), and VA, FHA and GSE loans.  Several identifying loan indicators were researched, including the loan number for the Kristina Martinez Loan (located on the Note, attached hereto as Exhibit "A").

15. Based on the research that I have conducted, the evidence shows, that the Kristina Martinez payment stream (The Debt) is currently in the New Residential Mortgage Loan Trust 2023-NQM1 as shown by the information below, as of May 29, 2024.

16. The Loan Level Data information for the Kristina Martinez loan below was obtained from the Citi Bank Investor Online Portal by an independent third party who specializes in locating Residential Mortgage-Backed Securities, (RMBS), and VA, FHA and GSE loans (Housing Mortgage Consultants), William McCaffrey on May 29, 2024.

**Search Results:** – New Residential Mortgage Loan Trust 2023-NQM1

This is a private deal.

The Loan Level Data information below was cross indexed with the Kristina Martinez Note to show the matching indicators information.

| Loan Number | Property Type Code | Owner Occupied Code | Loan Purpose code | Loan Type Code |
|---|---|---|---|---|
| 2000078816 | C | I | P | 20 |
| Matches Note | | | | |

| Current Loan Rate | Original Balance | Current Balance | First Payment Date | Maturity Date |
|---|---|---|---|---|
| 7.875 | 650000 | 645390.93 | 623 | 553 |
| Matches Note | Matches Note | | Matches Note | Matches Note |

| Current P&I | Servicer Fee Rate | Loan Term | Delinquent Code | LTV Ratio | Property State |
|---|---|---|---|---|---|
| 4712.95 | 1.15 | 360 | | 60 | CA |
| Matches Note | | Matches Note | | | Matches Note |

| Borrower Next Due Date | Servicer Number | Balance at Issuance | Delinquency History Flags |
|---|---|---|---|
| 52401 | Y63B | 650000 | 3 |
| | | Matches Note | |

| #Times Delinquent in last 12 Months | Initial Rate | Index Code | Gross Margin |
|---|---|---|---|
| 3 | 7.875 | E3 | 4 |
| | Matches Note | | Matches Note |

| Interest Rate Change Date | P&I Chg Date | Interest Rate Adjustment Frequency |
|---|---|---|
| 530 | 530 | 6 |
| Matches Note | Matches Note | Matches Note |

Affidavit of Joseph R. Esquivel, Jr. for – Kristina Martinez 3872 West Street, Oakland, CA 94608

| Payment Adjustment Frequency | Periodic Rate Cap | Periodic Payment Cap Percentage |
|---|---|---|
| 6 | 12.875 | 0 |
| Matches Note and Rider | Matches Note | |

| Life Maximum Interest Rate Ceiling/Maximum Rate Cap | Lifetime Rate Floor / Minimum Rate Cap |
|---|---|
| 12.875 | 7.875 |
| Matches Note | Matches Note |

| Life Maximum Interest Rate Ceiling/Maximum Rate Cap | Lifetime Rate Floor / Minimum Rate Cap |
|---|---|
| 12.875 | 7.875 |
| Matches Note | Matches Note |

| Original P&I Amount | Arm Negative Amortization Cap | Negative Amortization Code | ARM Round Code |
|---|---|---|---|
| 4712.95 | | | |
| Matches Note | | | |

| ARM Convertibility Code | Property City | Property Zip Code | Document Type | ARM Rate Lockout Period |
|---|---|---|---|---|
| | OKLAND | 94608 | NQM | |
| | Matches Note | Matches Note | | |

| ARM Payment Lockout Period | Number of ARM Look Back Days | ARM Round Factor | Pool Number |
|---|---|---|---|
| | 45 | 1 | WM05-PR1-1 |
| | Matches Note | | |

| Net Rate | Interest Only Flag | Interest Only Original Term | Interest Only End Date | Leasehold ID |
|---|---|---|---|---|
| | N | 0 | | |

| Account or Note Type Code | No Ratio ID | Investor ID | Group ID | Ending Scheduled Balance |
|---|---|---|---|---|
| 1 | | | 0 | |

| Fixed Retained Yield Rate | Foreign National Code | Adjustable Rate Mortgage(ARM) Indicator |
|---|---|---|
| 0 | | A |

| Program Code | Credit Grade | Channel Code | Relocation Indicator | Balloon Indicator | Lien Status |
|---|---|---|---|---|---|
| | | | | | 1 |

| Appraisal Value | Prepayment Penalty Months | Interest Collection Code | Original Interest Rate |
|---|---|---|---|
| | | | 7.875 |
| | | | Matches Note |

4

| Original Index Value | Interest Rate at Next Reset Date | PMI Coverage Percent | PMI Insurers Code |
|---|---|---|---|
| 0 | 0 | 0 | |

| Origination Date or Note Date | FICO Raw Score Number | Product Type | CLTV | Sale Balance |
|---|---|---|---|---|
| 20230407 | 775 | | 0 | 0 |
| **Matches Note** | | | | |

| Document Type Code | Issue Year | Series | Loss On Liquidated Property | Actual Current Balance |
|---|---|---|---|---|
| VVOE | 2023 | NQM1 | 0 | |

| Prepayments in Full | Partial Prepayments | Paid In Full Effective Date | Issuer Identification |
|---|---|---|---|
| 0 | 0 | | NEWRES |

| Master Servicing Fee | Trustee Fee | Pool Insurance Fee | Special Hazard Fee | Spread 1 Fee |
|---|---|---|---|---|
| 0 | 0 | 0 | 0 | 0 |

| Spread 2 Fee | Property County | Mortgagor Employer Name | Subsidy Code | LEX Lender Identification |
|---|---|---|---|---|
| 0 | ALMEDA | | | |

| Client Code Identification | Pledged Asset Mortgage Indicator | Sub Group | Current FICO Score Nbr |
|---|---|---|---|
| | | 0 | 775 |

| Prepayment Penalty Amount | Prepayment Penalty Waived Amount | Modification Date |
|---|---|---|
| 0 | 0 | |

| Substitution Date | Losses on Previously Liquidated Loans | Servicer Name |
|---|---|---|
| | 0 | NEW AMERICAN FUNDING |

| Arm Rate Life Cap | Originator Name | Interest Forgiveness Amount | Expense Forgiveness Amount |
|---|---|---|---|
| 12.875 | | 0 | 0 |
| **Matches Note** | | | |

| Principal Forgiveness Amount | Total Capitalized Amount | Balloon Date | Balloon Payment Amount |
|---|---|---|---|
| 0 | 0 | | 0 |

Affidavit of Joseph R. Esquivel, Jr. for – Kristina Martinez 3872 West Street, Oakland, CA 94608

| Modified Next Payment Adjust Date | Modified Next Interest Rate Adjust Date | ARM to Fixed Conversion |
|---|---|---|
| | | |

| Fixed to ARM Conversion | IO to Fully Amortized Conversion | Fully Amortized to IO Conversion |
|---|---|---|
| | | |

| Segmentation | Temporary Modification | Ending Scheduled Interest Bearing Balance |
|---|---|---|
| | | |

| Ending Actual Interest Bearing Balance | Ending Scheduled TDO Balance | Ending Actual TDO Balance |
|---|---|---|
| | | |

| Non-Interest Bearing Deferred Principal Balance |
|---|
| 0 |

| Principal Reduction Alternative Forbearance Balance | NIB Deferred Treatment Code |
|---|---|
| 0 | |

17. "Loan Level Data" refers to specific loan characteristics of the loan. Examples of different types of specific data types would be "Loan number," "Original Balance," "Maturity Date," "Property State," "Property Zip Code," "Property City," "Pool Number," and many more. Depending on the information that was available when the information was inputted and entered into the data platform, some loans would have more data available and others would have less.

18. Securitization is the process of "aggregating" (i.e., commingling) the payments from a large number of mortgage loans into what is called a "mortgage pool" and then selling "shares" (called "certificates") to investors, who then receive "returns" over a specific time period. The "pool" of commingled mortgage payments is "sliced" into "tranches" from which many different "classes" of investments (with varying rates of "returns") are created, and subsequently offered for sale by way of a "prospectus." Based on this information, Kristina Martinez's mortgage payments ultimately flowed to and/or through the "pool" created by or on behalf of the New Residential Mortgage Loan Trust 2023-NQM1 Trust. However, in my opinion, it is impossible to determine the exact amounts from any mortgage payment paid out to any specific investor, as

6

1  this was done *after* Kristina Martinez's payments were commingled with other monies.

2  19. The indicators pertaining to the Kristina Martinez loan show that the payment stream (The Debt)

3  was securitized, however it was not done properly; and that New Residential Mortgage Loan

4  Trust 2023-NQM1 paid value for the Kristina Martinez payment stream (The Debt) which was

5  the right to collect future payments for the Kristina Martinez mortgage loan.

6  20. Residential mortgage-backed securities, or RMBS, are bonds or notes created by securitization

7  that are backed by residential mortgages or residential real estate loans. RMBS originators are

8  typically financial institutions that originate residential real estate or residential mortgage loans,

9  including banks, building societies/savings & loans and mortgage finance companies. However,

10  issuers could also include government-guaranteed securities issued following bank bailouts, such

11  as TARP or TALF, and the Government Sponsored Enterprises Fannie Mae and Freddie Mac.

12  21. To create residential mortgage-backed securities, or RMBS, institutions sell pools of their loans

13  to a special-purpose vehicle, or SPV, which then sells the loans to a trust. The trust then

14  repackages the loans as interest-bearing securities and issues them. This true sale of the loans to

15  the SPV ensures that the RMBS is treated as bankruptcy-remote from the originator.

16  22. These trust entities are REMIC'S in which the IRS describes a (Real Estate Mortgage Investment

17  Conduit) REMIC as an entity formed for the purpose of holding a fixed pool of mortgages secured

18  by interests in real property (IRS Publication 550, Investment Income and Expenses, 2015)

19  23. Without these transactions going thru the proper parties, valid transactions can not take place and

20  that would leave the trust without having properly secured assets for the certificate holders.

21  24. I have examined the most current copy of the Kristina Martinez Promissory Note (which was

22  obtained by the borrower from Amwest Funding Corp, on or about May 24, 2024); the Kristina

23  Martinez Deed of Trust; and the entire public records of the Kristina Martinez Deed of Trust, and

24  have found that New Residential Mortgage Loan Trust 2023-NQM1 Trust is not named in any

25  manner on any of the instruments (See Exhibits "A" through "C"

26  25. I have examined a purported to be true and correct copy of a Promissory Note of Kristina

27  Martinez dated April 07, 2023, regarding a loan for $650,000.00. The Original Lender of the

28  April 07, 2023, Martinez loan is Amwest Funding Corp., (See Exhibit "A" attached within).

a.   This copy of the Kristina Martinez Note shows no endorsements to the Note attempting to make the Note payable to anyone.

26. The New Residential Mortgage Loan Trust 2023-NQM1 are not named in any way on the Kristina Martinez Note.

27. There is no evidence that New Residential Mortgage Loan Trust 2023-NQM1 ever received an ownership interest in the Kristina Martinez Note.

28. Endorsement is mechanically necessary to constitute transfer interest to party not originally named. Entitlement to enforce a note focuses on the relationship between the maker of the note and the person enforcing it. Ownership of the note is a concept that deals with who is entitled to the economic fruits of the note.

29. Paragraph 1 of the Kristina Martinez Note states "*I understand that the Lender may transfer this Note. The Lender or Anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Noteholder*."

30. I have examined a Deed of Trust of Kristina Martinez dated April 07, 2023, and filed in the Official Records of the Alameda County Recorder's Office on April 14, 2023 as ins# 2023042621 (See Exhibit "B" attached within).

a.   The **New Residential Mortgage Loan Trust 2023-NQM1** are not named in any way to the Kristina Martinez Deed of Trust

31. I have examined the Alameda County Record relating to the Kristina Martinez Deed of Trust dated April 07, 2023. The Alameda County Record shows that no Assignments of Deed of Trust have been filed into the public records (See Exhibit "C" attached within).

32. Based on my examination of the Kristina Martinez loan instruments, and all available documents recorded in the Alameda County records associated therewith, there is no evidence or indication that New Residential Mortgage Loan Trust 2023-NQM1 ever acquired ownership rights to the Kristina Martinez loan, note, Deed of Trust, the debt purportedly 'evidenced' thereby, and/or the real property purportedly 'secured' thereby.

33. Based on my examination, as New Residential Mortgage Loan Trust 2023-NQM1 has never acquired rights to the Kristina Martinez Note and Deed of Trust, those rights can not be

8

1  transferred to another party.

2  34. In my professional observation, all the available evidence that I have examined lacks proof, or

3  even a showing, of any proper transfer of the debt obligation (purportedly evidenced by the note)

4  along with proper transfer of collateral rights in the real property (purportedly evidenced by the

5  Deed of Trust).  In fact, there is no evidence that suggests the Kristina Martinez note was properly

6  transferred simultaneously with any purported transfer of the beneficial rights in the Kristina

   Martinez Deed of Trust.

7

8

9  The above statements are affirmed by me under penalty of perjury under the laws of the State of

10 Texas to be true and correct to the best of my knowledge and belief, are based on my own

   personal knowledge, and I am competent to make these statements.

11

12                          FURTHER THE AFFIANT SAYETH NAUGHT

13

14                          By; _____

15                          Joseph R Esquivel, Jr.
                            Private Investigator License # A20449
16                          Mortgage Compliance Investigations LLC

17 STATE OF TEXAS              )
                               )
18 COUNTY OF TRAVIS            )

19 Subscribed and sworn before me, __Lori M. Esquivel__, Notary Public, on this

20 __3rd__ day of __June__, 2024 by Joseph R Esquivel, Jr proved to me on the

21 basis of satisfactory evidence to be the person(s) who appeared before me.

22

23                          WITNESS my hand and official seal.

24  LORI M. ESQUIVEL
    ID #130167889
25  My Commission Expires    _____
    March 25, 2027           Notary Public

26

27

28
_____
                                        9
Affidavit of Joseph R. Esquivel, Jr. for – Kristina Martinez 3872 West Street, Oakland, CA 94608